**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                        Case No.      **8:11-CR-627-T-23AEP**
                                                            **8:12-CV-2780-T-23AEP**

**JORGE LEVIS GAMBOA-RENTERIA**
_____/

**ORDER**

THIS MATTER is before the Court by referral from the Honorable Steven D. Merryday for a Report and Recommendation on whether the United States can establish subject matter jurisdiction. (Dkt. No. 23.)[1] The matter was referred based upon the Court granting Jorge Levis Gamboa-Renteria ("Gamboa")'s motion for reconsideration. (*See* Dkt. Nos. 13 & 23.) Specifically, the matter was referred to the undersigned to "conduct an evidentiary hearing and file a report and recommendation on whether the United States can prove that Gamboa's vessel was in international water." (Dkt. No. 23 at 7.) The parties appeared before the Court on October 10, 2014, for an evidentiary hearing, and on October 16, 2014 for a status hearing. As directed by the Court during the October 16 status hearing, Gamboa filed an Amended Memorandum in Support of Issues Raised at Evidentiary Hearing (Dkt. No. 49) ("Memorandum") and the United States filed a Response in Opposition to Petitioner's Amended Memorandum in Support of Issues Raised at Evidentiary Hearing (Dkt. No. 50) ("Response"). Based upon the evidence presented and the entire record, the undersigned finds that Gamboa's vessel was in international water, and therefore, I recommend that the Court conclude that the United States has established subject matter jurisdiction in Gamboa's case.

---

[1] All references to the docket entries are to Case No. 8:12-CV-2780-T-23AEP unless otherwise specified.

## I. **PROCEDURAL HISTORY**

On December 15, 2011, a federal grand jury returned a two-count indictment charging Gamboa and his two crewmates with possession with the intent to distribute five or more kilograms of cocaine while onboard a vessel subject to the jurisdiction of the United States, and conspiracy to possess with the intent to distribute five or more kilograms of cocaine while onboard a vessel subject to the jurisdiction of the United States, in violation of the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 70503(a) and 70506(a) and (b).  (*See* Case No. 8:11-CR-627-T-23AEP, Dkt. No. 1.)  On February 15, 2012, Gamboa pled guilty to the conspiracy charge (count one) pursuant to a written plea agreement.  (*Id*. at Dkt. No. 23 & 37).  On May 10, 2012, this Court sentenced Gamboa to serve a 188-month term of imprisonment, to be followed by 60 months of supervised release.  (*Id*. at Dkt. Nos. 50 & 51).  Although Gamboa did not pursue a direct appeal, on December 10, 2012, Gamboa filed a Section 2255 motion (Dkt. No. 1) and supporting memoranda of law (Dkt. Nos. 2, 3 & 9) claiming this Court was without subject matter jurisdiction in light of the Eleventh Circuit's recent holding in *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012).  As detailed by Judge Merryday, "*Hurtado* explains that the enforcement of drug trafficking laws in the territorial water of another nation is not authorized by the Maritime Drug Law Enforcement Act, 46 U.S.C. §70503(a), *et. seq*.  Instead, the enforcement of drug trafficking laws of the United States is limited to international water, which is defined as all area beyond twelve miles from land.  *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003)."  (Dkt. No. 23 at 1.)  Thus, the issue before the undersigned as framed by Judge Merryday is "[b]ecause a district court has no subject matter jurisdiction if a vessel was never observed in international water, the linchpin is whether Gamboa's vessel entered international water."  (*Id.* at 1-2.)  To address whether Gamboa's vessel was in international water, the United States called as

witnesses at the October 10 evidentiary hearing, Homeland Security Special Agent Robert Curtis, United States Coast Guard Petty Officer Jason Likendey ("PO Likendey"), and United States Coast Guard Boatswain's Mate Matthew Wissman ("BM Wissman"), and, in turn, Gamboa testified on his own behalf.

## II. FACTUAL FINDINGS AND CONCLUSIONS OF LAW

In late November 2011, Gamboa and his crewmates departed in a go-fast vessel ("vessel") on the high seas from Charambia Choco, Columbia for purposes of transporting a load of cocaine. Based upon a sighting of the vessel, the United States Coast Guard Cutter Mellon ("USCGC Mellon") dispatched, in the early morning of December 1, 2011, a helicopter interdiction task squadron ("Hitron") to locate and pursue the vessel. PO Likendey was a member of the Hitron as the aviation gunner, which tasked him with the primary responsibilities of operating the helicopter's fifty-caliber gun, as well as the forward looking infrared camera ("FLIR"). Upon locating the vessel, PO Likendey utilized the FLIR to maintain a visual on the vessel, as well as to video record the pursuit of the vessel. PO Likendey testified that during pursuit of the vessel, the crewmembers of the vessel were seen at multiple times jettisoning bales of cocaine out of the vessel into the water. *See* Govt. Ex. 1.[2] The FLIR video depicted in Government Exhibit No. 1 details not only the pursuit of the vessel, but also provides other information, such as the date and GPS location information, imbedded on the video. PO Likendey testified that the information on the top left side of the video depicts the date of the pursuit, December 1, 2011, as well as the precise GPS location of the Hitron in terms of longitude and latitude. Further, PO Likendey

---

[2] Government Exhibit No. 1 is an approximate twenty eight minute long video produced by PO Likendey, while operating the FLIR during the December 1, 2011 pursuit of the vessel. At approximately six minutes into the video, the occupants of the vessel are observed jettisoning items out of the vessel. The Court finds the items jettisoned by the occupants of the vessel on the video are cocaine in consideration of Gamboa's admission in his Plea Agreement that approximately 307 kilograms of cocaine were recovered after it was jettisoned from the vessel. (*See* Case No. 8:11-CR-627-T-23AEP, Dkt. No. 23 at 17.)

explained that the GPS location information on the right side of the video is supposed to depict the GPS location of the vessel once it is laser marked, but that the GPS location information on the top right side of the video is inaccurate because the software for the FLIR's GPS ranging was not updated. PO Likendey also recognized that about four minutes into the video parts of the image appear frozen and pixelated. PO Likendey explained that while observing the video in real time he observed no problems with the image, and thus asserted that a likely reason for the pixilation of the video could have been a problem with the recording equipment. Regardless of the pixilation of the video and the inaccuracy of the GPS location information on the right side of the video, PO Likendey confirmed that the GPS location information on the left side of the video reflecting the Hitron's precise GPS location was unequivocally accurate.

Government Exhibits Nos. 2A, 2B, and 2C are still images from the FLIR video depicting various moments from the Hitron's pursuit of the vessel. Notably, Government Exhibit No. 2C depicts the boarding of the vessel by the USCGC Mellon's boarding team, and lists the GPS location of the helicopter at that moment at 7 41.49 N, 82 09.39W. PO Likendey explained that the Hitron was approximately 100 to 150 yards away from the vessel during the boarding of the vessel, as depicted in Government Exhibit No. 2C.

BM Wissman was called by the United States as an expert to testify as to whether the vessel was observed and boarded, as depicted in Govt. Ex. No. 1, in international waters, or stated another way, whether the vessel was observed and boarded outside the 12 nautical miles-territorial jurisdiction of Panama. Although BM Wissman testified during the October 16, 2014 hearing without objection pursuant to Fed. R. Evid. 702, the Defendant subsequently asserted in his Memorandum filed on November 12, 2014, that BM Wissman's testimony should not be accepted by the Court pursuant to Rule 702. *See* Dkt. No. 49 at 8-12. The essence of Defendant's objection

4

goes to the reliability of the underlying data used to calculate whether the vessel was observed and boarded in international waters, and not as to whether BM Wissman is an appropriately qualified to opine about the demarcation of Panama's territorial waters. Given BM Wissman's testimony regarding his experience and training, the undersigned fully accepts BM Wissman as an expert in maritime navigation and nautical charts.

Notably, BM Wissman demonstrated utilizing Govt. Ex. No. 3 and Govt. Ex. No. 4, which is a magnified image of the pertinent area from Govt. Ex. No. 3, on how he determined that the location at 7 41.49 N, 82 09.39W is in international waters, outside of the 12 nautical miles-territorial jurisdiction of Panama. BM Wissman noted that he plotted 7 41.49 N, 82 09.39W as "POS 5" on Govt. Ex. Nos. 3 & 4, and then satisfactorily explained on how he determined that the "POS 5" location is in international waters. Significantly, BM Wissman opined that 7 41.49 N, 82 09.39W is two miles outside the territorial waters of Panama, and further opined that after reviewing the video in Govt. Ex. No. 1, he determined that all of the GPS locations displayed on the left hand side are locations in international waters.

Contrary to BM Wissman's testimony, Gamboa, during his testimony, attempted to demonstrate with Plaintiff's Ex. No. 2, that the location at 7 41.49 N, 82 09.39W was inside Panama's territorial waters. However, in rebuttal BM Wissman again illustrated how he determined that the location at 7 41.49 N, 82 09.39W is located in international waters, and specifically utilized Plaintiff's Ex. No. 2 to reiterate his opinion, thus contradicting Gamboa's opinion. Upon careful consideration, the Court rejects Gamboa's opinion testimony, and in turn fully accepts BM Wissman's opinion and finds that the location at 7 41.49 N, 82 09.39W, as well as the other GPS locations depicted on the left hand side of the video during the entirety of the video, are locations in international waters. Given this finding, the Court is fully satisfied that the

pertinent GPS location information in the video establishes that the Hitron at all times depicted in the video during the pursuit of the vessel was flying over international waters.  However, the Court must still resolve whether the vessel itself was in international waters.

The United States asserts that the vessel was in international waters as demonstrated by the GPS location information for the Hitron on the left side of the FLIR video in Govt. Ex. No. 1, in conjunction with the testimony of both PO Likendey and Gamboa, principally, that the Hitron was at all times captured on the video within close proximity to the vessel.[3]  It must be noted that Govt. Ex. No. 1 was admitted into evidence without any objection by Gamboa during the October 16th evidentiary hearing.  However, Gamboa later asserted in his Memorandum that the GPS location information detailed in the FLIR video in Govt. Ex. No. 1 should not be accepted because: (1) the GPS equipment used by the Coast Guard was obsolete and unreliable; (2) the FLIR device used by the Coast Guard to determine the vessel's position is unreliable; (3) the GPS location information is inadmissible hearsay; and (4) the admission of the GPS location information would be a violation of the Confrontation Clause of the Sixth Amendment.  As an initial matter, given that Gamboa did not object to the admission of Govt. Ex. No. 1 during the evidentiary hearing his subsequent objections are untimely, and this Court may consider the FLIR video and the GPS location information on the video as evidence of record.  However, even in consideration of Gamboa's untimely objections, the Court finds that the FLIR video and the GPS location information on the video still warrant appropriate evidentiary consideration, as the Court finds Gamboa's objections are without merit.

---

[3] PO Likendey indicated that during the boarding as depicted in Govt. Ex. No. 2C, when the vessel was located at 7 41.49 N, 82 09.39W, the helicopter was within 150 yards of the vessel, and Gamboa estimated that the helicopter was within 50 meters of the vessel.

As to Gamboa's last two objections, the hearsay and Confrontation Clause objections, those objections are misguided in that the GPS location information depicted on the FLIR video is not a statement made by a declarant, and thus the GPS location information on the video cannot be inadmissible hearsay or contrary to the Confrontation Clause. *See* Fed. R. Evid. 801; *United States v. Lamons*, 532 F.3d 1251, 1263 (11th Cir. 2008) (stating that witnesses with whom the Confrontation Clause is concerned are *human* witnesses). As to Gamboa's first two objections regarding the reliability of the Coast Guard's FLIR and GPS equipment, those objections can be construed as two distinct arguments related to the authenticity of the evidence under Fed. R. Evid. 901, as well as to the weight of the evidence. As to authenticity, the burden rests with the United States' to authenticate the GPS location information on the video in Govt. Ex. No. 1, as described in Rule 901(b)(9). *See Lamons*, 532 F.3d at 1265. Certainly, the United States would have had to demonstrate through competent evidence during the evidentiary hearing that the GPS system produced an accurate result if Gamboa appropriately objected. However, because Gamboa failed to timely object to the admission of Govt. Ex. No. 1 on any basis, there was no need for the United States to introduce any such evidence to authenticate the accuracy of the GPS system for purposes of the exhibit to be admitted into evidence. Hence, any argument as to authenticity must fail.

Turning to what weight the Court should give the GPS location information depicted on the FLIR video in Govt. Ex. No. 1, Gamboa's argument is predicated upon evidence admitted during the evidentiary hearing, and new evidence that was never attempted to be introduced at the evidentiary hearing. As to the evidence admitted during the hearing, Gamboa argues that the reliability of the GPS location information should be questioned based upon the fact that the GPS location information on the right side of the FLIR video was not functioning correctly, and that during portions of the video the image displayed was frozen and/or pixelated. However, the Court

7

finds entirely credible PO Likendey's testimony that the GPS location information on the right side of the video was not functioning correctly because the software was not uploaded for that purpose, and that the pixilation of the image was likely an issue with the recording equipment and not the FLIR and GPS equipment because PO Likendey never observed any such issue as he monitored the FLIR video in live time.  Gamboa also calls into question the reliability of the GPS location information in Govt. Ex. No. 1 by citing to a number of articles and publications in his Memorandum.  (Dkt. No. 49, 8-10).  Putting aside that the articles and publications cited by Gamboa were not introduced as evidence subject to cross examination at the evidentiary hearing, the Court finds little value in the cited material as none of the material speaks directly to the reliability of the FLIR and GPS equipment used in this case to generate the GPS location information in Govt. Ex. No. 1.  Further, the Court finds more persuasive BM Wissman's testimony explaining that it is vital for the crew of any Coast Guard asset to know precise location information for safety of the vessel and the vessel's crew.  Thus, without competent evidence of record to contradict the reliability of the GPS location information tracking the Hitron's location in the FLIR video, the Court fully accepts as reliable the pertinent GPS location information in Govt. Ex. No. 1.  Given that the undersigned finds that the location at 7 41.49 N, 82 09.39W is in international waters and approximately 2 miles outside of Panama's territorial waters, and fully accepts the testimony of PO Likendey and Gamboa that the Hitron was within very close proximity to vessel at the moment as depicted in Govt. Ex. No. 2C, the undersigned is fully satisfied that the United States has established that the vessel was in international waters.

Last, Gamboa alternatively argues that if the Court determines the vessel was in international waters, the Court should still deny jurisdiction in the case because the United States manufactured subject matter jurisdiction by forcing the vessel to a specified location believed to

be in international waters.  Specifically, Gamboa asserts that he thought "he was being chased and was in fear of being shot by the helicopter's guns, but in reality he was being chased to a point where the government believed it would have jurisdiction."  (Dkt. No. 49 at 5.)  As an initial matter, Gamboa's forced jurisdiction argument assumes that the vessel was at all times in territorial waters prior to any interaction with law enforcement.  However, there is no credible evidence of record to support that the vessel was in territorial waters prior to the Hitron's pursuit of the vessel.  In contrast, as noted by BM Wissman, the Hitron, as depicted in Govt. Ex. No. 1, was at all times flying over international waters.  Regardless, even if there was evidence to support that the vessel was in territorial waters prior to the Hitron's pursuit, there is certainly no evidence to demonstrate that the Hitron did any action to direct the vessel's movements to force it into international waters.  Rather, the undersigned finds that the vessel's movements were done solely at the volition of Gamboa and his crew mates.  For example, PO Likendey testified that soon after the Hitron first encountered the vessel, the vessel stopped and crew members were seen throwing bales of cocaine out of the vessel into the water, and that just prior to being boarded, the vessel stopped again and crew members threw more cocaine out of the vessel.  (*See e.g.*, Govt. Ex. No. 1 at 6:00 – 8:00.)  The actions of the vessel's crew clearly demonstrate an intent to flee to avoid apprehension.  Thus, the undersigned finds that the movements of the vessel during the Hitron's pursuit were determined by Gamboa and his crew mates knowingly and voluntarily, and were in no way done as a result of any coercion by the Hitron.  Thus, the undersigned finds that Gamboa's forced jurisdiction argument is simply without merit.

Accordingly, upon due consideration, it is **RECOMMENDED** that the Court find that the United States has established that the vessel was in international waters; the vessel was not forced to travel in international waters; and thus, the United States has established subject matter jurisdiction in this case.

**IT IS SO REPORTED** at Tampa, Florida, this 4th day of March, 2015.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Steven D. Merryday
    Counsel of Record