UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 8:11-cr-627-T-23AEP
    8:12-cv-2780-T-23AEP

JORGE LEVIS GAMBOA-RENTERIA
_____/

**ORDER**

Under 28 U.S.C. § 2255 Gamboa-Renteria ("Gamboa") moves (Doc. 1) to vacate his sentence. The motion to vacate was denied partly because Gamboa admitted in his plea agreement that his vessel was in international water. (Doc. 23 at 17 in 8:11-cr-627-T-23AEP). "International water" is all area beyond twelve miles from land. *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003). The significance of the distinction between territorial water and international water was not realized when Gamboa pleaded guilty because *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012) (holding that subject matter jurisdiction is limited to only vessels in international water), issued six months after Gamboa's conviction became final. As an earlier order explains (Doc. 23 at 3), the action was re-opened after the United States' response did not show that the vessel was undoubtedly in international water:

> The United States provides a chart that depicts five locations for Gamboa's vessel, specifically where the vessel was initially observed, where the Coast Guard launched its pursuit craft, where the vessel crossed into international water, where the cargo was jettisoned, and where the vessel was boarded. However, the chart shows no demarcation between territorial water and international water and it

> identifies only a single distance of "approx 12.25 nmi" north of Isla de Montuosa, which places the vessel in the Gulf of Chiriqui toward Panama. In responding to the chart, Gamboa contends (Doc. 20) that he was not in international water because he was within the "waters of the Coiba National Park system," which encompasses the Isla de Montuosa. If the United States' approximation of "12.25 nmi" is off by approximately one-quarter of a mile, subject matter jurisdiction is exactly lacking. As a consequence, the United States needs to determine more precisely whether the vessel entered international water.

The district court referred the motion to vacate to Magistrate Judge Anthony E. Porcelli. (Doc. 23) After both appointing counsel to represent Gamboa and conducting an evidentiary hearing, the magistrate judge recommends (Doc. 51) denying the motion to vacate. Each party received a copy of the magistrate judge's report and recommendation. Gamboa objects. (Doc. 61)

**Report and Recommendation:**

The magistrate judge's thorough report includes the following recitation of facts from the evidentiary hearing and findings based on those facts:

1. A helicopter interdiction task squadron ("Hitron") was dispatched to locate and pursue a vessel. A failure to update software for the "forward looking infrared camera" ("FLIR") compromised the GPS information on the right side of a video monitor inside the Hitron but not the GPS information on the left side of the monitor (Doc. 51 at 3-4):

> The FLIR video depicted in Government Exhibit No. 1 details not only the pursuit of the vessel, but also provides other information, such as the date and GPS location information, imbedded on the video. [United States Coast Guard Petty Officer] Lilkendey [("PO Lilkendey")] testified that the information on the top left side of the video depicts the date of the pursuit, December 1, 2011, as well as the precise GPS location of the Hitron in terms of longitude and latitude. Further, PO Lilkendey explained that the GPS location information on the right side

of the video is supposed to depict the GPS location of the vessel once it is laser marked, but that the GPS location information on the top right side of the video is inaccurate because the software for the FLIR's GPS ranging was not updated. PO Lilkendey also recognized that about four minutes into the video parts of the image appear frozen and pixelated. PO Lilkendey explained that while observing the video in real time he observed no problems with the image, and thus asserted that a likely reason for the pixilation of the video could have been a problem with the recording equipment. Regardless of the pixilation of the video and the inaccuracy of the GPS location information on the right side of the video, PO Lilkendey confirmed that the GPS location information on the left side of the video reflecting the Hitron's precise GPS location was unequivocally accurate.

2. When Gamboa's vessel was boarded the GPS location of the Hitron was 7 41.49N, 82 09.39W. Each witness at the evidentiary hearing testified that the Hitron was in close proximity to Gamboa's vessel during the boarding. The Coast Guard witnesses testified that the Hitron was approximately 100 to 150 yards from vessel and Gamboa estimated that the Hitron was within 50 meters of his vessel. (Doc. 51 at 4, 6)

3. The magistrate judge accepts United States Coast Guard Boatswain's Mate Wissman ("BM Wissman") as an expert witness, who testified that the relevant GPS location was "two miles outside the territorial waters of Panama" and "that all of the GPS locations displayed on the left hand side are locations in international water." In other words, the Hitron always remained in international water. (Doc. 51 at 5)

4. The magistrate judge "rejects Gamboa's opinion testimony, and in turn fully accepts BM Wissman's opinion and finds that the location at 7 41.49 N, 82 09.39W, as well as the other GPS locations depicted on the left hand side of the video during the entirety of the video, are locations in international waters." (Doc. 51 at 5)

5. The magistrate judge (1) finds that "the entirely credible PO Lilkendey's testimony that the GPS location information on the right side of the video was not functioning correctly because the software was not uploaded for that purpose, and that the pixilation of the image was likely an issue with the recording equipment and not the FLIR and GPS equipment because PO Lilkendey never observed any such issue as he monitored the FLIR video in live time" and (2) concludes that, "[g]iven that the undersigned finds that the location at 7 41.49 N, 82 09.39W is in international waters and approximately 2 miles outside of Panama's territorial waters, and fully accepts the testimony of PO Lilkendey and Gamboa that the Hitron was within very close proximity to vessel, . . . the undersigned is fully satisfied that the United States has established that the vessel was in international waters." (Doc. 51 at 8)

6. Lastly, based on the finding "that the movements of the vessel during the Hitron's pursuit were determined by Gamboa and his crew mates knowingly and voluntarily, and were in no way done as a result of any coercion by the Hitron," the magistrate judge rejects Gamboa's argument that the Hitron chased his vessel into international water for the purpose of acquiring jurisdiction. (Doc. 51 at 9)

**Objections:**

Based on the above findings, the magistrate judge recommends denying Gamboa's motion to vacate. Gamboa asserts four objections (Doc. 61):

1. Gamboa's first objection challenges the GPS information that was displayed on the monitor inside the Hitron. "The Report and Recommendation erroneously accepted the Government's assertion as to the accuracy of the coordinates displayed on

the left side of the helicopter's viewing screen." (Doc. 61 at 2-3)  The essence of Gamboa's objection is that, because the information on the right side of the screen was admittedly inaccurate, the government has not "furnished any level of confidence in the accuracy of the information displayed on the left side of the screen."  (Doc. 61 at 3)

This objection lacks merit because the testimony at the evidentiary hearing proves that the information on the left side of the monitor operated separately from the information on the right side.  The information on the left side displayed the GPS location of the Hitron.  The information on the right side was supposed to display the GPS location of the vessel based on a laser marking of the location of the vessel, but the Coast Guard officers knew that the "FLIR" equipment was not functioning properly because the software had not been updated.

2.   Gamboa's second objection challenges the magistrate judge's ruling that Gamboa's evidentiary objections asserted in the post-hearing memorandum are untimely. "[T]he Report and Recommendation erroneously determined that the Petitioner failed to object to the Government's exhibits in a timely manner." (Doc. 61 at 6) Gamboa contests the magistrate judge's statement that his evidentiary objections asserted in the post-hearing memorandum are untimely.  The report states, "As an initial matter, given that Gamboa did not object to the admission of Govt. Ex. No. 1 during the evidentiary hearing his subsequent objections are untimely . . . ." (Doc. 51 at 6)

This objection to the report lacks merit because the magistrate judge considered the merits of Gamboa's post-hearing evidentiary objections.  "[E]ven in consideration of

Gamboa's untimely objections, the Court finds that the FLIR video and the GPS location information on the video still warrant appropriate evidentiary consideration, as the Court finds Gamboa's objections are without merit." (Doc. 51 at 6)

3. Gamboa's third objection (a continuation of the second objection) challenges the magistrate judge's rejection of Gamboa's post-hearing evidentiary objections to the accuracy of the GPS information. "[T]he Report and Recommendation erroneously determined that the four additional reasons advocated by the Petitioner were without merit." (Doc. 61 at 9) The report properly rejects each of the four reasons.[*] (Doc. 61 at 6–8)

4. Gamboa's fourth objection challenges the magistrate judge's conclusions and the recommendation to deny the motion to vacate. "[T]he Report and Recommendation erroneously recommended 'that the Court find that the United States has established that the vessel was in international waters; the vessel was not forced to travel in international waters; and thus the United States has established subject matter jurisdiction in this case.'" (Doc. 61 at 9–10)

Based on a credibility determination, the magistrate judge credits the testimony of the Coast Guard officers and rejects Gamboa's testimony. *Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980), instructs that "the district judge should not

---

[*] The four additional reasons are (1) "the GPS equipment used by the Coast Guard was obsolete and unreliable," (2) "the FLIR device used to determine Mr. Gamboa's position is unreliable," (3) "the GPS evidence offered by the government in inadmissible hearsay," and (4) the admission of the FLIR video coordinates and the testimony of the non-expert GPS witness/testimony of Mr. Lilkendey would be error in violation of the Confrontation Clause of the Sixth Amendment."

enter an order inconsistent with the credibility choices made by the magistrate without personally hearing the live testimony of the witnesses whose testimony is determinative." Nothing about the magistrate judge's hearing, the issues, the content of the testimony, the reasonableness of the factual findings, or any other aspect of the report and recommendation raises a doubt about the correctness and reliability of the result delivered by the magistrate judge, whose determinations and recommendations are accepted.

Accordingly, Gamboa's objections (Doc. 61) to the report and recommendation (Doc. 51) are **DENIED**. The report and recommendation (Doc. 51) is **ADOPTED**. The motion under Section 2255 to vacate the sentence (Doc. 1) is **DENIED**. The clerk must enter a judgment against Gamboa and close this case.

### DENIAL OF BOTH CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Gamboa-Renteria is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Gamboa-Renteria must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v.*

*Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because the facts clearly show that jurisdiction is proper, reasonable jurists would not debate the merits of the claims.  As a consequence, Gamboa-Renteria is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Gamboa-Renteria must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on June 2, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE